Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, ladies and gentlemen. We have six cases on the calendar this morning. Five of them will be decided on the briefs. One that is being heard is Taylor Energy Company v. United States. Mr. Waxman. Thank you, Judge Lurie, and may it please the court. It is undisputed that Taylor Energy can take no further measures to decommission the MC-20 site without doing more environmental harm than good. That has been the situation for nine years and there is no basis to think it will change. Yet the party's 2008 trust agreement, Taylor must keep nearly a half a billion dollars locked up indefinitely to no productive use. The trust agreement was one of many ways the government could and can require Taylor to provide financial assurances that it would decommission the MC-20 site. And if Taylor prevails in this litigation, those other options remain open to the government. But when the government signs a contract, even one to satisfy regulatory obligations, it is subject to ordinary contract principles. If a complaint in this case plausibly alleges that Taylor, the trust agreement reflects the party's shared expectation that Taylor would be able to complete its decommissioning obligations within a reasonable time and that the government would promptly allow release of the funds. Mr. Waxman, wasn't it projected by various governmental groups that no further progress could be made? So it was, there is, when you say government groups, Judge Laurie, I want to be clear about this. The 2013 Consensus Environmental Report, the CIRA report, and the- What about BSEE? BSEE has taken the position, it is BSEE's, which we call BSEE, position that while there is nothing that Taylor, given present technology, can do that would be more beneficial rather than harmful to the environment, and therefore that federal law prohibits Taylor Energy from proceeding, it held that under the regulations, it did not have to make a decision that no decommissioning activities will ever be able to be done. And the IBLA affirmed that because, as it said, there is nothing in the OAQS law or its implementing regulations that prevents BSEE from deferring its decision. The question in this case involves the disposition of a trust account that is governed by a contract, and the question in the case is whether or not the government gets to decide as a matter of contract law that this particular type of security can be held forever, even though the terms of the account were agreed upon under certain contract terms. Mr. Waxman, I think part of the problem is that you opened up with the statement that it is completely undisputed that nothing more can be done, but not just BSEE, but, and I don't know what you call the other one, BOEM, the Coast Guard, the Justice Department, they all said that they don't share the views of the CERA report. So I want to be clear on a couple things, Judge O'Malley. First of all, the CERA report was the government's report. They are entitled to change their mind, and I want to be clear that as a regulatory matter, decommissioning obligations never expire. Twenty years from now, if one of the wells that Taylor Energy plugged blows out, the government will come after Taylor Energy and BP, which was its predecessor in interest, for decommissioning obligations. That is not the question. That doesn't govern whether this particular account, which was established under the terms of a contract, which the complaint plausibly alleges had as a term, that the obligations to perform would expire within a reasonable period of time. That, as a contract matter, that period of time has now concluded, and I want to underscore, Judge O'Malley, that the government... Wait a minute, Mr. Waxman. Section 6.8 of the trust agreement provides determination when all obligations have been complied with, and they have not been. So, Judge Lurie, two things. First of all, the interpretation of this... The only question before this court, because the government has raised no state law or contract law interpretive positions at all, our position is that it is clear that as a matter of contract law, a contract that includes... A contract that includes a contract that includes a contract that has an indeterminate time of performance or an indeterminate duration, the obligation to perform terminates within a reasonable period of time. At trial, it will be an issue for the trier of fact to decide whether, under contract purposes, a reasonable period of time has expired. That is going to say nothing whatsoever about Taylor Energy's regulatory decommissioning obligations. But the government... There is no... Mr. Waxman, I'm sorry, but you seem to be jumping all the way to the end here. I think there are several hurdles that you would have to get past. And, for instance, what effect is the IBLA decision on your arguments? I mean, we're bound by that decision, and they specifically classified this as a lease-specific abandonment account, not as a contract. Whether, Judge O'Malley, whether or not... We're not suggesting that you aren't bound by the IBLA's decision. The IBLA did characterize the account as a lease-specific abandonment account, and the government makes much of that. Whether this does or doesn't qualify as a lease-specific abandonment account, it was an account that was set up pursuant to a contract, and that contract has to be interpreted under contract principles. And that is the only question that this court needs to or appropriately should decide. I want to say also that the IBLA... Well, you keep saying it's a contract, but isn't there a fair argument that the government makes on the other side that it's not a contract at all? It is simply... While it's called an agreement, it simply lists all of the regulatory obligations that Taylor has to abide by. Oh, Judge O'Malley, it does far more than that. And if I can just answer it by reference to the IBLA decisions in this case, there were two. There was a decision... There was a case that was filed in 2012 that involved Taylor Energy's claim to be entitled to additional reimbursement from the trust account. The IBLA made clear, and that opinion is in the joint appendix beginning at page 3505. And at page 3517, the IBLA makes clear that the issue of disbursements from the account and all questions relating to the trust agreement are decided by contract principles. Under the IBLA decision, the other decision, which is discussed in the brief in which the IBLA upheld Bessie's refusal to terminate the regulatory obligations, the IBLA made clear that it was making a determination under the regulations alone and was saying nothing about what the contract says or doesn't say about the government's obligation to return money from the trust account. And that is... I hope I haven't jumped over any hurdles, Judge O'Malley, but that really is... Well, it expressly says that the government's obligation is upon completion of all regulatory requirements. And regulatory requirements include decommissioning, correct? Yes. There is no doubt that under the regulation... There is a regulatory requirement that is independent of any contract and that survives the termination or expiration of any contract to fully decommission. That was the holding of the D.C. Circuit in the Noble Energy case, which followed from this court's decision in Amber Resources, where there was an adjudication of a contract breach in an Outer Continental Shelf leasing agreement. But did Noble Energy rely on newly enacted federal law that hadn't been contemplated under the original regulatory agreement? And here there is no newly enacted law, is there? No, no, no. There's no newly enacted law. What happened in Amber Resources, this court's decision in Amber Resources, is there was an interpretation by a California court that the... I'm trying to remember. The Coastal Zone Management Act had to be interpreted in a way that extended a certain timeline by which the government, in its lease, agreed that it would grant permits. And this court held that because of that, the government had no... The government had to follow the California state... The California court decision, but nonetheless, that produced a breach. And therefore, Amber Resources was excused from all of its obligations under the contract. The government, Bessie, then came back and said, well, you still have a regulatory obligation to decommission. And Amber Resources and Noble Energy said, no, we don't. We're relieved of any obligations under the contract. And the D.C. Circuit held the former may be true, but the latter is not. That is, even though you have no further contractual obligations to decommission, you have a regulatory obligation to decommission that survives and is independent of the contract. Yeah, but here it's not independent. Counsel, here it's not independent because the trust expressly incorporates 30 CFR 250 when it says, this trust agreement shall terminate upon the occurrence of either of the following conditions, mutual written agreement or Taylor's compliance with all obligations as evident by written concurrence of the government. So here it's not independent of the contract, wasn't expressly incorporated into the contract. So Judge Moore, I hope I'm getting the personalities right here, but Judge Moore, that term is in the contract. And if this court reverses and the matter goes down for adjudication, it will be available to the government and incumbent upon Judge Firestone to determine whether under contract principles that provision of the contract governs over the provision of Louisiana state contract law that says that when there is a contract that is whose performance date and termination date is indeterminable, Louisiana law imposes a reasonable time for performance under the contract. And we will put on evidence, again, the government has raised no state law issue here. We will put on evidence showing that the parties contemplated that the decommissioning pursuant to the plan that the contract required Taylor Energy to pursue, that decommissioning would proceed continuously with the exception of hurricane season and it would be completed within a year or shortly thereafter. And that contemplation together with the contractual obligation that Taylor Energy diligently pursued a completion of decommissioning obligations together with the state law principle that where the time for performance is indeterminate, state law imposes a reasonable time, there will be an adjudication whether under contract law a reasonable time has passed. That will do nothing whatsoever to relieve Taylor Energy of any further decommissioning obligations that it has. Mr. Wexner, before you use up all your rebuttal time, let me understand why under Parker Drilling you believe there are legal issues underlying Taylor's claims that are unaddressed by federal law. Yes, because the relevant issue in this case within the meaning of Parker is the how to interpret the terms of this contract. Parker Drilling did not overrule mobile oil exploration and may I please reserve the balance of my time. We will save two minutes for you, Mr. Wexner. Mr. Roberson. Thank you, Your Honor. May it please the court, this court should reject Taylor's appeal because it presents an interpretation of the trust agreement using Louisiana law that is directly at odds with OXLA, the Supreme Court's decisions in Amber Resources and Century Exploration. Notably, Taylor cannot cite to a single case where a court has employed the interpretive strategy that Taylor recommends here of dividing a single regulatory agreement into two sets of independent obligations. One regulatory subject to federal law and one contractual subject to state law with state law imposing implicit limitations on the scope of federal regulatory terms embedded in the agreement. Taylor's interpretive strategy is foreclosed as a matter of law. Parker Drilling instructs, citing OXLA 1333A2A, that where federal law has already addressed the relevant issue in a matter involving the Outer Continental Shelf, state law addressing the same issue is necessarily inconsistent with federal law and therefore cannot be adopted as federal law. Can I ask, is the government's position that there is no contract here or is the government's position that it doesn't matter if you characterize it as a contract because federal law covers the entire landscape of the agreement? So the government's position is that this is a lease specific abandonment account in the form of a trust. The trust is in the form of an agreement. So there were three parties to the trust agreement. You could say broadly that trust is a form of contract. And our position is completely consistent with the court's holding in mobile oil, which discussed the lease there as a contract and the notion that the relationships between the parties are the same as in the pipe. That's true. This is, though, a regulatory instrument and as mobile oil instructs, the regulatory terms are embedded as terms of this agreement, the trust agreement. And so this is not a contract, a Louisiana contract. It's a federal regulatory instrument, as was the lease. If you look and see what happens, the lease itself that Taylor had, had the same section one that Amber resourced in Century Exploration, which incorporates, literally and specifically incorporated office regulations, current and future. And then that requirement under Taylor's lease was incorporated in section 1.2D of the trust agreement. And there, the trust agreement then allows for those obligations to be part of the contractual obligations. So this notion that Taylor has to revert to, the fiction that they revert to is this notion that there's a bifurcation of a single instrument, this trust agreement, lease specific in abandonment count, and that federal law doesn't apply to the contractual components of it. It's only applying to regulatory components, ignoring that this is a singular agreement, a unitary agreement, and that is the instruction of mobile oil. Mobile oil found that the section one incorporated, was incorporated by reference and incorporated by reference federal statutes and regulations. Using federal law, court determined that a breach of contract occurred relative to the incorporated office regulations. State law was not invoked to address the breach of contract claim in mobile oil or amber resources or century exploration. And instead, it was federal law. Federal law was what the government did, inconsistent with the federal terms embedded in the contract. And in amber resources and mobile oil, the court concluded that what the government had done was inconsistent with the lease terms that were concluded. So wait, just going back to my question then. So is your answer that yes, there's a contract, but federal law governs all aspects of it? Or is your answer that the lease is a contract, but the trust agreement is not? I'm not quite sure I'm following. The lease obviously was a contract, and the trust agreement in the broadest sense is a form of contract. It was an agreement, but it was not a contract. It was a trust agreement. So there's an agreement. There's three parties that are to it. Taylor is a second. Okay. So what we are getting to then is essentially the Parker drilling question, right? Once you have the... Your Honor, that's correct. Once you see that the regulatory terms are incorporated as part of the trust agreement, then Parker drilling instructs there's no state law that can apply to interpret those terms. And Taylor's complaint is based entirely on the application of Louisiana law. Therefore, Parker drilling instructs consistent with the level of oil that Taylor... Well, I understood opposing counsel to pretty much acknowledge based on the portion of the agreement that I read that the trust shall terminate upon occurrence of either the following mutual written agreement or compliance with all obligations. I mean, that is the regulatory decommissioning obligation. So I don't see how we're not in Parker drilling territory. Correct. I absolutely agree, Your Honor. In fact, if you look at all the substantive obligations of the trust, you'll see that they're all regulatory obligations. They flow from 30 CFR 250.1700 through. And those regulatory obligations are embedded in the trust. The decommissioning obligations of Schedule A expressly cite regulatory obligations that are controlling the decommissioning obligations. So what's your response to the argument that was made on the other side that if we're in Parker drilling territory, that we should remand for the Court of Federal Claims to assess whether there are legal issues underlying Taylor's claims that are unaddressed by federal law in the first instance? Well, I think generally Parker drilling doesn't really establish new law. It just reiterates basically what Ofsler says and what is consistent with Rodriguez and Offshore Logistics. So in the first instance, there's really Parker drilling certainly made it less ambiguous if there was any, but it doesn't really break new law. It really reiterates the extent of federal supremacy. Then if you look at basically this notion of remand, then you should go to the Fuhrman versus Davis factors with respect to Rule 15 Amendment. Basically, you've got undue delay, you know, four years. We filed our motion to dismiss four years ago stating that they failed to state a claim. They didn't amend their complaint, and then four years later after the Federal Circuit, they want to now suddenly remand and amend their complaint. That is undue delay. It would also be undue prejudice. So we were basically near the point of having an order to decommission issued by Bessie, and then we suddenly have litigation for another few years over whether or not there's a valid trust again. So it would be undue prejudice as well. Traditionally, the economy would not be there. Well, is there a merit material dispute over whether the legal landscape is covered by federal regulation or not? I don't think that Parker drilling, again, changes much, and it certainly... If you look at OXLA, the statute's there. We argued it, and we argued it using Rodriguez and Offshore Logistics, but there's a whole slew of cases. If you go down to the Fifth Circuit and even at the district courts in the Fifth Circuit that... I don't think... I'm sorry. Please go ahead, Judge Lurie. Mr. Robeson, what do we do with the impossibility argument? There's some evidence here that these leaks could continue for 100 years. So the notion of the leaks to continue for 100 years is not something I think that has a realistic... I would think of it two ways. One is, is this a problem that can be fixed? Yes, it can be fixed, and if you look at Taylor's impossibility argument, it's not that it can't be fixed. It's they're saying that there's a risk-benefit that makes it impossible for them to comply with federal regulations as they interpret it using state law. So what they say is, oh, there's only three gallons a day leaking, and therefore decommission effort is too risky. The risk and benefit from that don't add up to a course of action because you have to undertake actions that are safe and sound. But they're using Louisiana law of impossibility to affect the federal law, which simply says you're going to decommission until Bessie says that the pollution... Section of Bessie, that's 30 CFR 250.300A1. So first of all, you have to look at what their argument is, and it requires the application of Louisiana law of impossibility to affect the federal regulation. That goes against Parker Drilling. The second thing is, the notion that there's three gallons a day, we are collecting over 1,000 gallons a day and have been doing so for a year and a half since we got a containment system up. To date, in a year and a half, we've collected 464,000 gallons of oil. So the general notion, factually, about what they're arguing, it's unfounded. But the more important point is, for the motion to dismiss, is the notion that... Yeah, but counsel, that last argument about how many gallons you got and how many gallons they say it is, that would be a fact question. That's not something we would be deciding on appeal. I don't understand why you think that argument ought to persuade us. I'm not arguing that the 464,000 gallons should persuade you. My persuasion for you is that they're using Louisiana law of impossibility, contractual term, to affect a federal regulatory term embedded in the contract that says you have to decommission to the satisfaction of Bessie. And that's Parker Drilling. And that's true even if Bessie won't be able to be satisfied? I mean, that's kind of what they're saying. They're saying that there's such a risk, and therefore, because of the risk, we can't satisfy that condition. If there's a second level of dissatisfaction with Bessie, it's not through the contract. There's no breach of the contract term. They have the opportunity to go back to the idea, to go back to Bessie's departure request from our regulatory obligations. And then they can go through that process. And if Bessie's acting arbitrarily and capriciously by not allowing them to go forward or to get their money back, then that's for the IPLA. But in a true breach of contract claim, they're stepping on Parker Drilling because they are advocating for Louisiana law of contract impossibility. In fact, federal regulations embedded in the contract. So whereas Mobil Oil, in those cases, looked at federal actions that are impinging on the federal regulatory terms embedded in the contract, what Taylor's arguing is Louisiana state law indicates that the terms, federal terms embedded in the contract were improper, and therefore, it's a breach under Louisiana state law. That's impossible under drilling. And if you look at the terms of the contract, all the terms, again, as I said, are embedded terms. All the major terms are embedded terms of regulatory requirement. And if you look at the choice of laws, they argue that while they have the choice of law, there's plenty of authority that OXLA supersede, that OXLA does supersede the normal choice of law rules. Taxable expiration, the contract's choice of law provision is of no moment because the party's choice of law will not trump the choice of law being provided by Congress and OXLA. And that clause is not meaningless. There are examples where Louisiana law could apply to the trust. If you look at Section 2.6, 2.9, there's periodic account statements, monthly statements. There was something there that went afoul of Louisiana law. It's not impinging on the federal area of regulation that's embedded in the contract. And so those could be a point where Louisiana law could apply. But here, Taylor's caught between the dilemmas of Mobil Oil and Parker Drilling, and they fail to state a claim because they are basing their claim on Louisiana law. If you look at their claims, too, they're internally inconsistent. Taylor argues that if it were to prevail in a breach of contract claim, its regulatory obligations would remain the same. Yet the trust is established as a regulatory agreement to ensure funds are available to pay for the completion of Taylor's decommissioning obligations. And under Taylor's theory of the case, that rescinded, voided, or reformed under Louisiana law. We wouldn't have the regulatory instrument of a trust to ensure that Taylor's performance can be paid for. So its arguments ignore that the goal of the trust is to ensure that in a world where Taylor remains obligated to pay for the decommissioning of its wealth, there are indeed funds available to undertake these obligations. If the court has no further questions, I just ask that the court, for the foregoing reasons and for the reasons stated in our briefs, affirm the court's decision dismissing Taylor's complaint. Thank you, Mr. Rogerson. We have your case. Mr. Waxman has two minutes for rebuttal. Thank you, Your Honor. There is no regulatory reason to insist on this particular pot of money. If and when Taylor Energy prevails in this litigation, the government will be able to impose a reasonable bonding requirement, presumably under a surety bond, the cost of which will be vastly less than a half a billion dollars, to fully satisfy and ensure any other Judge Moore, it is not our position that under the contract law that the trust will terminate only when the government fully agrees. Our position is that under contract law, which has to govern under Lynch and Mobil, because this is a contract as the government concedes and I.B.L.A. agrees, under contract law there is a term for it that performance must be within a reasonable time and the impossibility issue that the court's questions address as relevant here is not whether it will forever be impossible to do anything, but whether it is impossible within a reasonable period of time to conduct further decommissioning safely in an environmentally friendly manner. Federal law currently prohibits Taylor Energy from doing anything, it has for the last nine plus years, and Taylor Energy may not proceed with a single decommissioning step unless the government provides a permit and approves. The government says, Mr. Roberson started by saying that there is no case we've cited that imposes two sets of laws to decommissioning and reimbursement obligations. Noble Energy did exactly that. The regulatory terms for decommissioning were embedded in the contract in that case, just like it is here, and as this court held in amber, contract law did decide the question, but it didn't relieve the regulatory obligations. I see that my time has expired and I thank the court. Thank you. Mr. Waxman, we appreciate the arguments of both counsel and the case will be taken under submission. The Honorable Court is adjourned until tomorrow morning at 10 a.m.